HARVARD LAW LIBRARY

*Litchfield,*
June, 1846.

Goddard
*v.*
Prentice.

## GODDARD and others *against* PRENTICE.

In pursuance of an ante-nuptial agreement between *A* and *B*, the future husband and wife, and *C*, she conveyed certain estate belonging to her to *C*, to be held by him, in trust for her, with power to sell and convey such estate, and reinvest the proceeds in other estate. After the marriage, *C*, in the course of executing his trust, purchased of *D* a parcel of land, and after paying part of the purchase money, it was agreed, for the sake of convenience, that the land should be conveyed to *E*; that he should give his note to *D* for the balance of the purchase money, and should hold the land solely as security for his liability on such note; and that, after being fully indemnified, he should transfer the property to *C*, as the trustee of *B*. Accordingly, the land was conveyed to *E*, and he gave his note to *D* for the sum due; *A* going into possession of the land in right of *B*, his wife. *E*, before any payment made by him, became insolvent, and never paid any thing on his note. *C* has since paid it, with trust funds in his hands. While the title of the land was held by *E*, *F*, a creditor of *E*, attached the land, and had it set off to him on execution; *F* having full knowledge of the nature of *E's* title. *F* then brought ejectment against *A*, to recover possession of the land, claiming title, by virtue of the levy of his execution against *E*. On a bill in chancery brought by *A*, *B* and *C* against *F*, to restrain him from prosecuting his action, and for a conveyance of the legal title to the land, it was held, 1. that *E* had in equity only a mortgage upon the land, to secure him against his liability on his note given to *D*; and after that note was paid by *C*, *E* held only the legal title, without any beneficial interest; 2. that *F*, having full knowledge of the trust, at the time of the attachment, was liable to the same equity, and stood in the same situation, as *E*; 3. that as *F* acted throughout with notice, his title would not be protected, on the ground that the record showed an absolute title in *E*, by means of which he might obtain credit; 4. that the devisee of *F* was affected by the notice to him, and stood in the same situation as he did, in relation to this property; it being a settled rule, that the devisee of a trust estate takes it subject to the trust; 5. that as *F* acquired no beneficial interest in the land, his widow was not entitled to dower therein; 6. that *A*, *B* and *C*, having an interest in the subject matter of the suit, were properly parties thereto as plaintiffs.

THIS was a bill in chancery for an injunction against the prosecution of an action of ejectment brought by the defendant to obtain possession of certain real estate, and for the conveyance of the legal title to such estate. The parties were *Joseph Goddard*, *Marana E. Goddard*, his wife, and *Henry D. Sewall*, plaintiffs, against *Laura Prentice*, defendant. The court referred the cause to a committee, who reported the following facts.

*Marana E. Norton*, in contemplation of her intermarriage with *Joseph Goddard*, entered into an agreement, by indenture between them and *Henry D. Sewall*, that certain real

and personal estate, of considerable value, belonging to her, should be conveyed to *Sewall*, to be held by him in trust for her sole and separate use, during the coverture, and afterwards in trust for certain purposes, particularly specified, with power, in the meantime, to sell and convey the property, and re-invest the proceeds in other estate. The intended marriage took effect. *Sewall* accepted the trust, and took upon him the burden of executing it. Afterwards, on the 15th of *December* 1836, he contracted with *Dudley Henderson*, for the purchase of two tracts of land, with the buildings thereon, at the price of 1100 dollars; and not being able to pay cash at the time, he proposed to secure the payment of the purchase money, by mortgaging back to *Henderson* the purchased premises; but as he (*Sewall*) resided out of the state, it was mutually agreed between *Joseph Goddard*, as his agent, and *Henderson*, for their mutual convenience, that *Henderson* should convey the title to the premises to *George Stanley*, then of *Goshen*, in this state, since deceased, who was reputed to be a man of sufficient pecuniary responsibility; that *Goddard*, as such agent, should pay down to *Henderson* the sum of 350 dollars; and that the residue of the purchase money should be secured to *Henderson*, by two notes of *Stanley* for 375 dollars each, with interest; and that *Stanley* should hold the title in the premises, in trust for said trustee, and as an indemnity against said notes. This arrangement was communicated to *Stanley*, who assented thereto, and became a party to it; and it was immediately carried into effect. The agreement was in writing, and of the following tenor: "Whereas *J. Goddard* has bought of *Dudley Henderson*, certain lands and the buildings thereon, on account of the trustee of Mrs. *Marana E. Goddard*, for the sum of 1100 dollars; and for the mutual accommodation of said *Henderson* and *Goddard*, *George Stanley* hereby engages to give his notes for 750 dollars, payable, one half *May* 1st, 1838, and one half *May* 1st, 1839, in part payment of the same, and have the deed of the same made in his own name, for his security: therefore, it is agreed, by *George Stanley*, of the first part, and *J. Goddard*, of the second part, that said *Stanley* shall hold said real estate, whatever the value thereof may be, solely as security for money or advances, for the benefit of Mrs. *Marana E. Goddard*, exclusively, after having realized the

*Litchfield*, June, 1846.

Goddard
*v.*
Prentice.

HARVARD LAW LIBRARY

Litchfield,
June, 1846.

Goddard
v.
Prentice.

amount on the same, with interest and expenses. *J. Goddard*, on the second part, hereby engages to repay the amount advanced by said *Stanley, viz.* 750 dollars, one half on the 1st of *May* 1838, and the balance on the 1st of *May* 1839, with interest to the time the several sums are paid. It is also provided, that said *Goddard* shall have the privilege, at any time, to make payment of the same, with interest until so paid ; and said *Stanley* hereby covenants, that whenever payment is made of the same, he will transfer the same to the trustee of Mrs. *M. E. Goddard*, by deed, for her benefit solely." [Then follows a description of the estate in question.] " Should said *Goddard* fail to fulfil making the payments, at the times above-mentioned, said *Stanley* shall be empowered to sell the lands aforesaid, giving said trustee notice, and also posting notice of the time and place of sale, as usual to give town notice ; advertising the same, in two several papers, two months previous to sale, and continuing said advertisement in said papers until the time of sale. A copy of this agreement, with a notice of non-fulfilment, sent two months previous to sale, to *Henry D. Sewall*, of *Watertown, Jefferson* county, *N. Y.*, shall be deemed sufficient and requisite. Whatever said property may bring over what is required to repay *G. Stanley's* advances, with costs, expenses, interest, &c. shall be paid over to the trustee of Mrs. *M. E. Goddard ;* and whatever deficiency, should there be any, said estate shall hereby be liable for. *G. Stanley* is empowered, and hereby engages, to effect insurance, and *J. Goddard* to pay expenses of the same. *Goshen, December* 15th, 1836.

*George Stanley.*  [L. S.]
*Joseph Goddard.*  [L. S.]"

In pursuance of this agreement, *Sewall,* as trustee of *M. E. Goddard*, provided the funds for the payment of *Stanley's* note for 375 dollars, payable on the 1st of *May* 1838 ; and paid that note, out of funds so provided, and not from any funds of *Stanley.* The other note, payable on the 1st of *May* 1839, *Stanley* neglected to pay, during his life, except the first year's interest thereon, which he paid from funds provided by said trustee. This note became, by assignment, the property of *Roswell Page.* About the time this note fell due, *Stanley* became insolvent, and afterwards died wholly insolvent, and no part of it has ever been paid from his estate.

Neither he, while living, nor his estate, since his decease, has been damnified, by reason of his giving said note.

On the 10th of *July* 1845, since the commencement of this suit, *Sewall*, by *Augustus Miles*, as his agent, bought in said note, for the sum of 5 dollars, and now holds it. *Stanley* never entered into the possession of the premises ; but immediately upon the execution of the deed from *Henderson* to him, the possession was given to said trustee, who has ever since continued in the peaceable and open occupation thereof, paying taxes thereon.

On the 11th of *June* 1840, *Walker Prentice*, then living, but since deceased, attached said real estate, as the property of *Stanley ;* and on the 11th of *December* 1841, had it set off to him, on an execution, which issued upon the process by virtue of which it had been attached. At the time of the attachment, and also at the time of the levy of the execution, *Prentice* had full knowledge that the title to said premises was holden by *Stanley*, as an indemnity against said notes, and subject to such indemnity, in trust for the benefit of Mrs. *M. E. Goddard*, and of her trustee ; and that such trustee was in possession of the premises. *Prentice* died, in *December* 1843 ; and *Laura Prentice*, his widow and devisee, commenced an action of disseisin against *J. Goddard*, who was then in possession of the premises, as agent of said trustee ; she claiming title thereto, by virtue of the levy of said execution. The action referred to is now pending before the superior court in the county of *Litchfield*. *Walker Prentice*, by his last will and testament, gave to his wife, *Laura Prentice*, the use, improvement and benefit of all his real estate, during her natural life, and likewise the one half of all his personal property.

The case was reserved for the advice of this court, on the question whether the report of the committee should be accepted, and if so, what decree should be passed thereon.

*Seymour*, for the plaintiffs, contended, 1. That as between *Stanley* and *Sewall*, the trustee of Mrs. *Goddard*, the transaction is in equity as effectually a mortgage, as if the agreement was attached to the deed from *Henderson*, and recorded with it. The agreement was made in good faith, and, as between *the parties*, was in no manner objectionable.

2. That as between a party *with notice,* and the trustee, the transaction in equity is the same.    1 *Sto. Eq.* 385. and cases there cited.

3. That as a mortgagee's interest is in law not subject to attachment, so in equity *this* interest, being of the same nature, is not to be regarded as the subject of attachment.    In the first place, if *Stanley* had paid the money, his interest would have been a mere chose in action.    But secondly, inasmuch as *Stanley* paid nothing, so long as he remains liable to pay, he holds the property as a mere *indemnity*—not as a pledge for a debt, but a pledge to secure against a liability.    The very object of such a pledge would be defeated, if the court should hold, that it could be transferred by attachment and levy of execution.

4. That all the purposes for which the security was given, being now fully answered, the plaintiffs are entitled to a conveyance of the legal estate.    In the first place, *Stanley* was never damnified.    Secondly, he is now dead, and his estate wholly insolvent.    Thirdly, the note being now the property of the trustee, whose duty it is under the agreement to pay it, there can be no further liability against *Stanley* or his estate.

5. That there is no legitimate purpose for which the defendant should have possession.    If she takes possession, she takes as mortgagee, to account for the rents and profits, and apply them to pay the mortgage debt.    But to *whom?*    Not to herself; for she has no mortgage debt.    Not to *Stanley;* for he has none.    But to the trustee himself, who now owns the only debt chargeable upon the premises, and who is now in possession.

*Church,* for the defendant, addressed to the court a series of remarks in opposition to the relief sought, apparently without much regard to any artificial arrangement.    In the course of his argument, he was understood to insist, 1. That the extraordinary exercise of chancery jurisdiction, by arresting the regular proceedings of a court of law, was here unnecessary, because *Sewall,* the trustee, not being insolvent, the *cestui que trust* had adequate remedy against him.

2. That the record title being in *Stanley,* a creditor of *Stanley,* who might have trusted him, and may be presumed to have done so, on the basis of such title, had a right to con-

*Litchfield,*
June, 1846.

Goddard
*v.*
Prentice.

sider him as the owner of the land ; and that notice of the trust made no difference. If a creditor has right to treat the record owner *as owner*, he does not lose this right because he knows what he is about. If *Prentice,* in this case, had learned from the gossip of the neighbourhood, that the land was conveyed to *Stanley in trust,* he knew from the record, that *Stanley* had an absolute title. Which is the safest guide for a creditor—the rumor, or the record? Here the cases of *Botsford* v. *Burr,* 2 *Johns. Ch. Ca.* 405. 409. *Steere* & al. v. *Steere* & al. 5 *Johns. Ch. R.* 1. and *Rogers* v. *Murray* & al. 3 *Paige* 390. were referred to and commented on.

3. That whatever may be the effect of notice upon *Prentice,* the creditor, it can have no effect upon the title of his devisee, the present defendant. If one having notice of a prior unrecorded deed, takes a conveyance of the land, and then conveys it to one having no notice of such deed, the latter is not affected by such notice. *The State of Connecticut* v. *Bradish,* 14 *Mass. R.* 296. *Trull* v. *Bigelow,* 16 *Mass. R.* 406. *Boynton* & al. v. *Rees,* 8 *Pick.* 329. *Coffin* v. *Ray,* 1 *Metc.* 212. *Somes* v. *Brewer,* 2 *Pick.* 184.

4. That *Stanley* was not a mere trustee, but had a beneficial interest, at the time the execution of *Prentice* was levied ; one of the notes which he had given being then unpaid. Whatever interest *Stanley* had, *Prentice* took, and now can hold.

5. That the defendant has a right of dower in the land, and can hold it to the extent of that right.

6. That here are too many plaintiffs. The sole object of the suit is to protect the rights of the *cestui que trust ;* and she does need such an escort.

WAITE, J. The material facts embraced in the report of the committee, are substantially these.

*Joseph Goddard,* in behalf of the trustees of the property of his wife, entered into a written contract with *George Stanley,* by which it was agreed, that certain lands, bought by the trustee, and in part paid for by him, should be conveyed to *Stanley,* and that he should give two notes to *Henderson,* the vendor, in payment of the balance of the purchase money. It was further stipulated, that the lands should be holden by *Stanley,* solely as security for his liability upon those notes ;

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1846.*

Goddard
*v.*
Prentice.

and that the balance of the property, after realizing enough therefrom to indemnify him for his advances and expenses, should be exclusively for the benefit of Mrs. *Goddard.* The husband agreed to re-pay *Stanley* all that he should advance ; and the latter agreed, that whenever that payment was made, he would transfer the property to the trustee of Mrs. *Goddard.*

The notes were accordingly given ; the lands conveyed to *Stanley ;* and *Goddard,* in right of his wife, entered into the possession. *Stanley,* before any payment made by him, failed ; and the lands were attached and set off upon execution to *Walker Prentice,* the husband of the defendant, who was a creditor of *Stanley,* and afterwards died, having devised them, with other real estate, to his wife, for life. *Prentice,* at the time of the attachment, had full knowledge of *Stanley's* title ; and neither *Stanley,* in his life-time, nor his representatives since, have ever paid any thing upon his notes, with his property. But one of them was paid with funds provided by the trustee ; and the other has since been purchased, by an agent of his, by whom it is still holden. The defendant is now prosecuting her action of disseisin against *Goddard,* to recover possession, claiming title under the levy of the execution in favour of her husband.

The first enquiry naturally arising upon these facts, is, what would be the rights of these plaintiffs in a court of chancery, as against *Stanley,* were he still living, the owner of the property, and prosecuting an action to recover the possession. The contract shows, that he had in equity but a mortgage upon the lands, to secure him against his liability upon his notes, given for a part of the purchase money. Whenever those notes were paid or discharged, by the plaintiffs, his beneficial interest in the property would be gone. He has expressly agreed, that when he was repaid his advances and expenses, he would convey the property to the trustee of Mrs. *Goddard.*

The report of the committee shows, that neither he nor his estate, has ever paid any thing on account of these notes ; that one has been paid with funds furnished by the trustees, and the other purchased by their agent. The debt, therefore, for which the property was mortgaged, has become satisfied ; and *Stanley,* were he living, would have only the legal title,

without any beneficial interest. He would stand in the same situation as any other mortgagee, holding the legal title, after the debt had been discharged.

*Litchfield,*
June, 1846.

Goddard
*v.*
Prentice.

The object for which the conveyance to him was made, would be accomplished, and a court of chancery would compel him to convey the legal title to the trustee, according to the terms of his contract. The attempt, under such circumstances, to deprive the plaintiffs of the possession, would be inequitable and unjust; and an injunction against further proceedings in the action at law, would be granted.

In the next place, what would be the situation of *Prentice,* the levying creditor, were he living? He took the property, with full knowledge of the trust. And no rule in equity is better established, than that persons coming into possession of property bound by a trust, with notice of the trust, shall be considered as trustees. 2 *Mad. Chan.* 103.

He could acquire no greater interest from *Stanley,* than belonged to the latter. He would be liable to the same equity; would stand in the same situation; and be bound to do all that *Stanley* could be required to do. *Taylor* v. *Stibbert,* 2 *Ves. jun.* 439. 2 *Fonb. Eq.* 42. But *Stanley,* if living, and still the owner of the legal title, might be compelled to convey. So *Prentice,* having acquired nothing more than *Stanley's* interest, if living, with notice of the trust, would be liable to a similar decree.

It was said in the argument, that the records showed an absolute title in *Stanley,* and that credit may have been given to him by *Prentice,* relying for security upon his ownership of the property; and that it would operate as a fraud upon creditors, to allow *Stanley* to hold himself out to the world as the unconditional owner of the property, obtain credit thereby, and then defeat the claims of creditors, by showing a secret trust.

But no facts are shown, in the present case, authorizing the inference that *Goddard,* in his arrangement with *Stanley,* acted with any fraudulent design; or that the latter obtained credit with *Prentice,* by means of his apparent ownership of the property. Had the defendant relied upon any claim of that sort, it was incumbent upon her to show it.

But it is said, the law will presume that credit was given to *Stanley,* in consequence of his apparent ownership of the prop-

HARVARD LAW LIBRARY

*Litchfield,*
June, 1846.

Goddard
*v.*
Prentice.

erty. If it does, it will not give the creditor a specific lien upon it, unless he has acquired it, by some act of his. Had he attached the property, or taken a mortgage of it, without fraud and without knowledge of any trust, his title would prevail in equity, as well as at law. But having omitted to take any lien upon the property, either by attachment or in any other manner, until he was informed of the true condition of *Stanley's* title, he stands in the same situation as a purchaser with notice at the time of the attachment. Had he attached with knowledge that the property had been conveyed to the plaintiffs, and their deed not recorded, the attachment could not, as against them, prevail.

But there is another difficulty in this part of the defence. It is found, that *Prentice* had knowledge of *Stanley's* title, at the time of the attachment; and it does not appear but that he had this knowledge at the time the credit was given. If he had, then no credit was justly given to *Stanley* in consequence of this apparent ownership.

Again, it is said, that *Stanley* had an interest, when the execution was levied; for one of his notes was then out-standing and unpaid. But, at that time, he had paid nothing. He held the property merely for his security against his liability. When that liability was removed, the property was no longer needed for his security. The removal of that liability was no fraud upon *Stanley*, or any one claiming under him; for the plaintiffs, in doing it, did nothing more than was agreed to be done on their part, when the original arrangement was made.

Finally, what is the situation of the present defendant? It is claimed, that if her husband was chargeable with notice, that does not affect her: for she comes in the character of a purchaser. It is true, a title by devise, is called a title by purchase, as distinguished from a title by descent. But a devisee is not a purchaser for valuable consideration, so as not to be affected by the notice given to the devisor. He stands rather in the situation of an heir at law. Now, it is very clear, that the heirs of *Prentice* would stand in his situation, as it regards this trust property, and would be affected by notice to him, in precisely the same manner, that he would, if living. And it would be very strange, if he could destroy that effect, by a devise of his property, instead of letting it pass to his heirs, by

descent. Indeed, the rule is settled, that a devisee of a trust estate, takes it subject to the trust. 2 *Mad. Chan.* 364.

Again, it is claimed, that if the defendant cannot hold as devisee under the will, she is at least entitled to her dower. But the latter title rests upon no better foundation than the former. If her husband, at the time of his death, had no beneficial interest in the property, she could derive none from him, either as widow or as devisee. If her husband held the property as a mere trustee or a mortgagee, in neither case would his widow be entitled to dower in it.

Another claim has been made on the part of the defendant, that here are too many plaintiffs. But all of them have an interest in the subject matter of the suit—the trustee, that the property may be conveyed to him, in order that he may execute the trust—and the wife, that it may be conveyed for her benefit. If she is properly a party, it is necessary that her husband should be united with her.

The general rule, in cases of this sort, is, that in suits respecting trust-property, brought either by or against trustees, the *cestui que trust*, and the trustees, are necessary parties : the former having the equitable, and the latter the legal interest. *Sto. Eq. Plead. s.* 207.

Our advice, therefore, is, that the report of the committee be accepted; that the defendant be enjoined against the further prosecution of her action at law for the possession, and be ordered to convey all her interest in the property to the trustee of Mrs. *Goddard.*

In this opinion the other Judges concurred.

Decree for plaintiffs.